# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 8347 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CITY OF EVANSTON, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jermaine Wilson brought suit against the City of Evanston pursuant to 42 U.S.C. § 1983 alleging various constitutional violations in connection with Evanston's disposal of his belongings following his arrest. Evanston has brought a motion to dismiss [31]. For the reasons provided below, the Court grants in part and denies in part the motion to dismiss.

## Factual Background

Wilson was arrested by the Evanston Police Department on or about July 10, 2013. *See* Am. Compl. ¶ 23, ECF No. 26. At the time of his arrest, Wilson had in his possession a wallet, a cell phone, a belt, and a backpack. *See id.* ¶ 24. Evanston inventoried Wilson's belongings and retained some of it. The rest was sent with Wilson to Cook County Jail along with a Prisoner Property Receipt, which provided a description of the items that Evanston kept. *See id.* ¶¶ 23–24.

The Prisoner Property Receipt contains the following instructions:

**NOTIFICATION REGARDING YOUR PROPERTY**

Certain property in your possession, will not be accepted by the Cook County Department of Corrections when you are transported to court for your bond hearing. These items are marked above with a checkmark. In order to protect your property, we have inventoried them with our Property Bureau. You or your designee will have 30 days from the date of your arrest to retrieve these items. If you do not retrieve these items within the 30 days they will be disposed of as

> provided by statute. THIS IS THE ONLY NOTICE YOU WILL RECEIVE ABOUT YOUR PROPERTY.
>
> These items may be retrieved during the normal operating hours of the Property Bureau as posted on the Evanston Police Department web site We strongly suggest that you call first to schedule an appointment (847.866.5029).

*Id.* ¶ 13. According to Wilson, when detainees are taken to Cook County Jail, the Receipt is seized by intake personnel and stored with the detainee's personal property. *See id.* ¶ 15. Importantly, he alleges that Evanston knows that the Receipt is taken from the detainees upon arriving at Cook County Jail. *See id.*

Wilson remained in Cook County Jail until October 2014 and was not able to return to Evanston to retrieve his property. *See id.* at ¶ 25.

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A complaint, however, must also allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## Analysis

I.  **Fourth Amendment**

As an initial matter, Wilson's brief in opposition to the motion to dismiss refers to a Fourth Amendment violation, but Wilson's complaint makes no reference to the Fourth Amendment or an illegal search or seizure. *See* Compl. ¶ 30–32. The Court thus construes his complaint as alleging only Fifth and Fourteenth Amendment violations. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

II. **Fifth Amendment**

Evanston argues that Wilson's Fifth Amendment takings claim is premature, because he has not sought compensation through state procedures. *See* Mem. Supp. Mot. Dismiss at 7–8, ECF. No. 33. Wilson, in turn, makes two arguments for why he was not required to pursue state remedies. First, he contends that the Local Governmental and Governmental Employees Tort Immunity Act protects Evanston against any claims by Wilson arising from the failure to store his property. *See* Pl.'s Mem. Opp'n Mot. Dismiss at 7–9, ECF No. 35. Next, Wilson argues that, because Evanston's alleged violation arose from a policy rather than from a random and unauthorized act, he need not pursue state remedies before bringing this suit. *See id.* at 4–6.

Where a plaintiff asserts a takings claim for real property under the Fifth Amendment, federal courts may not adjudicate such disputes until: (1) the regulatory agency in question has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts

3

available state remedies for compensation. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193–94 (1985). These requirements have been read to apply to Fifth Amendment claims beyond those involving real property. *See Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015).

Here, Defendants argue that Wilson has not met the second of the two requirements because he has not availed himself of state law remedies, including available common law claims. *See Gates v. Towery*, 331 F. Supp. 2d 666, 672 n.4 (N.D. Ill. 2004) ("For example, Illinois law recognizes a common law claim for conversion to hold officials responsible for wrongfully taking property."); *see also New Port Largo, Inc. v. Monroe Cty.*, 95 F.3d 1084, 1089 (11th Cir. 1996) ("With no indication that Florida property law or tort law deny recourse . . . we cannot consider whether the Fifth Amendment would allow some compensation for that act.").

In response, Wilson contends that the following provision in the Illinois Tort Immunity Act forecloses such claims and, accordingly, he has exhausted all available state remedies for compensation.

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

745 Ill. Comp. Stat. § 10/4-103. But, on its face, the statute does not appear to bar a tort claim under the theory of conversion or bailment against Evanston arising out of the destruction or sale of Wilson's personal belongings. After all, Wilson is not alleging that Evanston should have provided additional equipment, facilities, or personnel.

Undeterred, Wilson argues that the Illinois Appellate Court's decision in *Black v. Dart*, 28 N.E.3d 884 (Ill. App. Ct. 2015), reads § 10/4-103 in a way that would apply to Wilson's hypothetical state law claims. In that case, James Black brought suit against Sheriff Dart for

4

damages resulting from the detainee's alleged mistreatment while at the Cook County Department of Corrections. *See id.* at 885. Black alleged that "he was unable to take a daily shower, use the telephone or purchase personal items from the commissary. He further alleged that, upon his release, the [Department of Corrections] failed to return his clothing to him." *Id.*

Before the trial court, Dart asserted that he was immune from liability because "he (1) is not liable for failure to provide sufficient equipment, personnel, supervision or facilities in a jail; and (2) is not responsible for injuries arising from the discretionary acts of his employees or for claims resulting from matters involving policy determinations." *Id.* at 886; *see also* 745 Ill. Comp. Stat. § 10/2-201 ("[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."). Black did not respond to Dart's arguments regarding immunity, and the trial court granted summary judgment in favor of Dart. *See Black*, 28 N.E.3d at 887. The Appellate Court held that, based on the plain language of § 10/4-103 and § 10/2-201 and the fact that Black had failed to challenge Dart's immunity defense, the trial court's ruling should be affirmed. *See id.* at 888.

With regard to the failure to return Black's property, the Appellate Court affirmed, but in doing so it relied upon § 10/2-201, rather than §10/4-103. Indeed, in its ruling, the court remarked, "The plaintiff does not dispute the Sheriff's contention that decisions regarding the method of maintenance, storage, and return of the personal property of inmates are unique to the Sheriff's office and require him to 'make a judgment call' as to the proper allocation of time and other resources of his office." This language tracks the immunity established by § 10/2-201, not § 10/4-103. Thus, *Black* does not stand for the proposition that Wilson suggests.

5

Wilson also contends that he need not pursue available state remedies before pursuing his Fifth Amendment claim because the alleged violation arose from a policy rather than from a random and unauthorized act. But this doctrine, which applies to Fourteenth Amended due process claims, does not apply to Fifth Amendment taking claims. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 379–80 (7th Cir. 1988).

Because Wilson has failed to exhaust state law remedies for the alleged deprivation of property, Wilson's Fifth Amendment takings claim is dismissed without prejudice.

### III.    Fourteenth Amendment

Next, Evanston seeks dismissal of Wilson's due process claim under the Fourteenth Amendment. Initially, as with the Fifth Amendment claim, the city raises a concern regarding Wilson's failure to allege why state remedies were inadequate. On the merits, Evanston argues that it provided adequate notice and constitutionally proper process.

#### A.    Adequate State Remedies

To begin with, to the extent that Wilson relies on the Tort Immunity Act to argue that no adequate state remedies exist for the alleged due process violation, that argument fails for the reasons stated above.

In addition to the Tort Immunity Act, Wilson asserts a second and independent reason for why he does not need to exhaust state remedies. As with Fifth Amendment claims, plaintiffs alleging due process violations must exhaust state law remedies before going to federal court and seeking the protection of the Fourteenth Amendment. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 379–80 (7th Cir. 1988). That requirement, however, does not apply when the offending conduct is pursuant to a policy rather than random and unauthorized actions. *See id.* In this case, it is uncontested that the procedure according to which Wilson's property was kept and

6

ultimately disposed of, was a written policy. As a result, Wilson is not required to exhaust state remedies before coming to federal court to assert his due process claim.

There is, however, one additional wrinkle to the exhaustion analysis that was not addressed by either party. The Seventh Circuit has read the Fifth Amendment's exhaustion requirement broadly, such that a plaintiff's attempt to package a takings claim as an equal protection or due process claim must still pass the exhaustion requirements set out in *Williamson County*. *See Patel v. City of Chi.*, 383 F.3d 569, 572–73 (7th Cir. 2004); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994). As a result, for cases in which a due process challenge is merely a repackaged takings claim, a court must apply the more stringent *Williamson* exhaustion requirement—which does not contain an exception when the plaintiff challenges a policy rather than a random and unauthorized act.

In *Patel*, for example, the Seventh Circuit decided to apply the *Williamson* requirements to the plaintiff's equal protection claim. 383 F.3d at 573. The City of Chicago had passed an ordinance that designated the area surrounding Patel's motels as a redevelopment zone and identified his motels as potential targets for acquisition through eminent domain. *Id.* at 569. Patel brought suit alleging that the ordinance violated the Equal Protection Clause. *Id.* at 571. The court held that, as the complaint made clear, the equal protection claim was squarely within the rubric of a takings claim—as opposed to a bona fide equal protection claim. In particular, the injury asserted was based solely on the threat of eminent domain and not based membership in a protected class. *See id*. at 573.

By contrast, in *Hager v. City of West Peoria*, after applying the *Williamson* requirements to the plaintiffs takings claim, the Seventh Circuit held that those requirements were not applicable to the plaintiff's equal protection claim. 84 F.3d 865, 869–70 (7th Cir. 1996). West Peoria had enacted municipal ordinances charging a fee to trucks that used the road leading to Hager's businesses. *Id.* at 867. Hager brought suit alleging an unconstitutional taking and an equal protection claim. Hager's equal protection claim, the court explained, would evaporate if the city collected the fee from every heavy truck. *Id.* at 870. "Thus, rather than just a single takings claim with different disguises (including one for equal protection), in this case . . . plaintiffs . . . raised a legitimate equal protection claim." *Id.*

Like the equal protection claim in *Hager*, Wilson's procedural due process challenge is not merely a dressed up takings claim. As evidenced by their briefing on the motion to dismiss, the crux of the due process claim is that Evanston provided inadequate notice about what would happen to his property and an inadequate procedure to recover it. *See* Pl.'s Mem. Opp'n Mot. Dismiss at 11–14. These allegations are separate from the takings claim that seeks "just compensation" for the city having deprived Wilson of his property. *See* Compl. ¶ 32. Because his Fourteenth Amendment challenge is not merely duplicative of his takings claim, the *Williamson* exhaustion requirement does not bar Wilson's procedural due process claim.

B. **Wilson Has Stated a Due Process Claim**

Defendant also argues that Wilson has failed to state a due process claim. There are two elements of Wilson's procedural due process claim. First, he argues that he did not receive sufficient notice about how he could recover his clothes. Second, Wilson contends that Evanston's procedure for recovering his property was itself a violation of due process because it made it nearly impossible to recover the inventoried property.

As to the former, due process requires state entities to take reasonable steps to give notice to an individual that "property has been taken so that the owner can pursue available remedies for its return." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999). When the procedure for protecting a property interest is not described in any publicly available document, such as a state statute, the state entity must ensure that the procedure is available to those individuals whose property is at risk. *See id.* at 241–42; *see also Gates v. City of Chi.*, 623 F.3d 389, 397–99 (7th Cir. 2010). "[T]he notice need not actually reach its intended target so long as is reasonably calculated to do so." *Gates*, 623 F.3d at 402.

Here, Wilson has failed to identify why the substance of the notice was constitutionally deficient. The city gives each person detained a Prisoner Property Receipt that described the procedure by which the detainee could recover his property. In fact, looking at the Receipt, it appears that the detainee is even required to sign immediately below the section that describes the procedure. Notices have been held to be constitutionally inadequate, for example, if notice is sent to an arrestee's home when the state entity knows it will not reach him, *see id.*, or if the notice provided is misleading in some material way, *see id.* at 401. Yet here, Wilson's complaint's only reference to the notice states that "detainees are not provided with constitutionally adequate notice of any adequate procedure through which they may reclaim their property." Am. Compl. ¶ 31(b). Wilson's response to the motion to dismiss similarly fails to identify any reason why the notice was improper. Pl.'s Mem. Opp'n Mot. Dismiss at 11–14. The Court thus finds that Wilson has failed to state a procedural due process claim based on inadequate notice.

Wilson does, however, state a valid due process challenge the adequacy of Evanston's procedure for recovering the inventoried property. The Prisoner Property Receipt gives detainees

or their designees thirty days to pick up the property. When a detainee is held at Cook County Jail for over thirty days, the only way he can ensure that his property will not be discarded is to send a designee to pick it up. In order to do so, however, Evanston's procedures require that the designee be in possession of the Receipt itself. Wilson alleges that when detainees arrive at Cook County Jail, the Receipt is taken from them, stored with the property that Evanston did not inventory, and not readily accessible while the detainee is at the jail. Am. Compl. ¶ 15. Moreover, Wilson alleges, and the Court must accept as true, that Evanston knows that Cook County Jail takes the Prisoner Property Receipt from detainees when they arrive and that it is not readily accessible to detainees while at the jail. *Id.* Because Wilson has alleged that Evanston's procedure is not reasonably calculated to allow prisoners who are detained for over thirty days to recover their property, he has stated a viable due process claim.[1]

Evanston's motion to dismiss Wilson's due process claim is granted in part and denied in part. The portion of Wilson's due process claim based on inadequate notice is dismissed without prejudice. Because Wilson has pleaded a proper due process claim based on the adequacy of Evanston's procedure, that portion of the claim may proceed.

## Conclusion

For the reasons stated herein, the Court grants in part and denies in part Evanston's motion to dismiss [31]. The motion is granted as to Wilson's Fourteenth Amendment due process claim to the extent it is based on inadequate notice and as to the Fourth and Fifth Amendment claims. The Court denies the motion as to Wilson's Fourteenth Amendment due process claim based on inadequate process.

---

[1] It does not make a difference that Cook County's actions are part of the reason why retrieving the property is not practicable. *Cf. Gates*, 623 F.3d at 402 (noting that due process is violated when the state entity knows that notice is not reasonably calculated to reach the intended target).

**IT IS SO ORDERED.**              **ENTERED 1/28/16**

_____

**John Z. Lee**
**United States District Judge**