# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE WILSON and DAMEON SANDERS, | ) ) ) | |
| Plaintiffs, | ) ) | 14 C 8347 |
| v. | ) ) | Judge John Z. Lee |
| CITY OF EVANSTON, ILLINOIS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jermaine Wilson ("Wilson") and Dameon Sanders ("Sanders") were arrested by the Evanston Police Department ("EPD") in July 2013. They allege that, at the times of their arrests, EPD took and inventoried various items of personal property in their possession. Plaintiffs were later transferred to the Cook County Jail and permitted to bring only such items of their property as Cook County would accept. The remainder of their property was retained by EPD. Upon their transfer, EPD gave Plaintiffs receipts instructing them that, if the retained property was not retrieved within thirty days, it would be destroyed or otherwise disposed of.

In this case, Plaintiffs contend that EPD disposed of their property pursuant to this policy and have sued the City of Evanston ("the City") under 42 U.S.C. § 1983, claiming that EPD's property disposal policy violates their substantive and procedural due process rights. They seek to certify a class of similarly situated

individuals.  For the reasons that follow, Plaintiffs' motion for class certification [57] is granted.

## Background

In January 2012, EPD revised its policy for handling arrestees' personal property once they were transferred to the custody of Cook County.  *See* Def.'s Resp. Opp'n Mot. Class Cert. 3, ECF No. 63; 2d Am. Compl. ¶ 8, ECF No. 56.  According to the City, the January 2012 revision accomplished two goals: (1) making retrieval of property easier for arrestees by enabling them to designate a third party to retrieve their property; and (2) "highlight[ing] the need for immediate action on the part of the arrestee" by reducing the amount of time before EPD would dispose of property from ninety to thirty days.  Resp. at 3.

As part of these revised procedures, EPD prepared a new "Personal Property Receipt" to be given to each transferred inmate.  It states in part:

### NOTIFICATION REGARDING YOUR PROPERTY

Certain property in your possession[ ] will not be accepted by the Cook County Department of Corrections when you are transported to court for your bond hearing.  These items are marked above with a checkmark.  In order to protect your property, we have inventoried them with our Property Bureau.  You or your designee will have 30 days from the date of your arrest to retrieve these items.  If you do not retrieve these items within the 30 days they will be disposed of as provided by statute.  THIS IS THE ONLY NOTICE YOU WILL RECEIVE ABOUT YOUR PROPERTY.

These items may be retrieved during the normal operating hours of the Property Bureau as posted on the [EPD] web site.  We strongly suggest that you call first to schedule an appointment (847.866.5029).

Pls.' Mot. Class Cert., Ex. 2, ECF No. 57 (emphasis omitted). The form then calls for the arrestee's signature. *Id.* It also provides a space in which the arrestee can designate a third party who can, "upon presentation of proper identification and the yellow copy of this notice," retrieve the arrestee's property. *Id.* (emphasis omitted).

Plaintiffs were transferred to the custody of Cook County after their arrest by EPD, and each received a Prisoner Property Receipt documenting various items of property that EPD retained. Resp. at 3. Wilson was arrested by EPD on July 10, 2013. Resp., Ex. 2 ("Wilson Dep."), at 24:17–20, ECF No. 64-2. He was transferred to the Cook County Jail and remained there while his criminal case was pending for a year and a half. *Id.* at 57:10–14. During this time, EPD destroyed or otherwise disposed of items of his property. Mot. Class Cert., Ex. 5 ¶¶ 63–64. Sanders was arrested on July 25, 2013. Resp., Ex. 3 ("Sanders Dep."), at 28:19–22, ECF No. 64-3. He was transferred to the Cook County Jail and remained there while his criminal case was pending for four months. *Id.* During this time, EPD destroyed or otherwise disposed of items of his property. *See id.* at 62:24–63:11.

Wilson filed this suit against the City on October 23, 2014, and filed an amended complaint on May 12, 2015. In his First Amended Complaint, Wilson asserted a Fifth Amendment takings claim and a Fourteenth Amendment procedural due process claim. 1st Am. Compl. ¶¶ 31–32, ECF No. 26. The City moved to dismiss both claims. The Court granted the City's motion as to the Fifth Amendment takings claim, finding that Wilson had failed to exhaust state law remedies. *Wilson v. City of Evanston*, No. 14 C 8347, 2016 WL 344533, at *3 (N.D.

Ill. Jan. 28, 2016). The Court then addressed two different aspects of Wilson's procedural due process claim. First, it concluded that Wilson did not state a claim based on his theory that the notice contained in the Prisoner Property Receipt was insufficient. *Id.* at *4. It then turned to Wilson's theory that EPD's procedure for recovering inventoried property was inadequate. Wilson claimed that EPD requires prisoners' designees to be in possession of a receipt in order to pick up property, that Cook County does not provide access to these receipts while prisoners are in custody, and that EPD is aware of this shortcoming. *Id.* at *5 (citing 1st Am. Compl. ¶ 15). In light of these allegations, the Court held that "Wilson has alleged that [the City's] procedure is not reasonably calculated to allow prisoners who are detained for over thirty days to recover their property," and therefore stated a plausible procedural due process claim. *Id.* Wilson added Sanders as a co-plaintiff and filed a Second Amended Complaint on August 31, 2016.

The present motion for class certification followed thereafter. Plaintiffs seek to certify two classes under Federal Rule of Civil Procedure ("Rule") 23(b)(3). One corresponds to a substantive due process–based theory of recovery, and the other to a procedural due process–based theory.[1]

---

[1] In supplemental briefing requested by the Court on the classes proposed in Plaintiffs' motion, Plaintiffs raise for the first time a theory based on the Fourth Amendment. Pls.' Supplemental Br. 2–3 & n.1, ECF No. 73. But Plaintiffs' motion does not seek to certify a class based on this theory, nor does their complaint make any mention of it. Plaintiffs are correct that they need not plead "specific legal theories," *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015), but without some understanding of the underlying basis of Plaintiffs' claim, it is impossible to consider whether a class can be certified under Rule 23, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (holding that it is necessary to consider the theory underlying a claim in order to determine whether a class should be certified). Plaintiffs have not proposed a class definition for a Fourth

Under the substantive due process–based theory, Plaintiffs argue that an Evanston ordinance requiring the EPD to store property for sixty days after the final disposition of court proceedings in connection with which the property was taken creates a constitutionally protected property interest.[2]  Plaintiffs contend that EPD's property disposal policy violates this protected interest.  Mot. Class Cert. at 4.

Under the procedural due process–based theory, Plaintiffs maintain that, because "persons incarcerated are unable to travel to [EPD] to retrieve their property," EPD's policy is not reasonably calculated to permit them to recover their property if they are held for more than thirty days.  Pls.' Reply Supp. Class Cert. 10, ECF No. 10.  In their supplemental brief, Plaintiffs elaborate on this theory, explaining that they seek a determination of "whether the notice requiring an in-custody arrestee to find a designee to retrieve his (or her) property provides a constitutionally adequate procedure."  Pls.' Supplemental Br. at 7.[3]  In their brief, Plaintiffs explain that the named plaintiffs, despite attempting to designate family

---

Amendment–based claim nor explained why the requirements of Rule 23 are satisfied in relation to it, and the City has not had an opportunity to weigh in.  The Court therefore declines to give this issue further consideration in ruling on Plaintiffs' motion.

[2]      The ordinance, which is included within a chapter entitled "Lost, Stolen Property," states, in pertinent part, that "[i]f property seized . . . shall not be claimed by the rightful owner thereof  . . . within sixty (60) days from the final disposition of the court proceedings in connection with such property was seized . . . the custodian of lost and stolen property may sell such property at a public auction."  Mot. Class Cert., Ex. 6.; *see* Evanston Code of Ordinances § 9–7–3(A).

[3]      Insofar as Plaintiffs seek to certify a class based on challenging the notice provided in the Prisoner Property Receipt, such an attempt would be precluded by the Court's prior order granting Defendant's motion to dismiss in part.  *Wilson*, 2016 WL 344533, at *4.

members to pick up their personal property, were unsuccessful in doing so. *Id.* at 6–7. At the status hearing in which the Court ordered supplemental briefing, Plaintiffs explained that instead of requiring someone else to retrieve Plaintiffs' property, Evanston "should hold [arrestees' property] until [they] get out." This theory departs from Plaintiffs' initial theory that Cook County prohibits individuals from keeping their personal property receipts, which Plaintiffs abandon in their briefing. Pls.' Reply at 10–11.

Plaintiffs propose the following classes for certification:

**Class I, Substantive Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at [EPD] and destroyed or otherwise disposed of before the conclusion of court proceedings in connection with which such property was seized or otherwise taken possession of.

**Class II, Procedural Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at [EPD] and destroyed or otherwise disposed of while that person remained in the custody of a jail or penitentiary.

## Legal Standard

Plaintiffs move to certify two classes under Rule 23. Under Rule 23(a), it is the movant's burden to establish four requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If the movant establishes these requirements, the movant must then show that its proposed class satisfies one of the categories in Rule 23(b). Where, as here, the

movant seeks to proceed under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members," and "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In regard to these requirements, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, it is the movant's burden to demonstrate, by a preponderance of the evidence, that the requirements of Rule 23 are satisfied. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). As such, when reviewing a motion for class certification, a court "may not simply assume the truth of the matters as asserted by the plaintiff[s]," but instead must receive evidence and resolve factual disputes as necessary before deciding whether certification is appropriate. *Id.* (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350–51 (internal quotation marks and citation omitted).

That said, while it is proper to look to the merits in ensuring that class certification is proper under Rule 23, *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010), "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). "The Seventh Circuit has been as

unequivocally clear as the Supreme Court in *Amgen,* warning that '[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) (quoting *Messner*, 669 F.3d at 811.)

## Analysis

Before turning to analyze whether Plaintiffs have met the requirements of Rule 23, the Court pauses to address the City's initial argument that Plaintiffs' claims are not "[c]ognizable" under § 1983, and that the Court should therefore "deny Plaintiffs' request for class certification without analyzing the proposed classes under Rule 23." Resp. at 6–8.

This argument plainly misunderstands the nature of the Rule 23 inquiry. As explained above, it is not the Court's task in evaluating Plaintiffs' class certification motion to determine whether their claims are plausible or will succeed. Merits issues are relevant only insofar as they help determine whether Rule 23's requirements are met. *Amgen*, 133 S. Ct. at 1195; *Bell*, 800 F.3d at 376; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotation marks and citation omitted) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."). Thus, despite the City's suggestion otherwise, *see* Resp. at 6–8, it is irrelevant for the purposes of this motion whether Plaintiffs state adequate substantive and

procedural due process claims, or whether their admissions defeat any such claims.[4]

The City can pursue such arguments pursuant to Rules 12(c) and 12(h)(2), or on summary judgment under Rule 56. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (explaining that failure of proof is an argument for summary judgment, not class certification). Whether the City ordinance on which Plaintiffs ground their substantive due process claims actually creates a protectable interest may be hotly contested, *see* Resp. at 8, Def.'s Supplemental Brief at 2–3, Pls.' Supplemental Br. at 3–5, but it is a question for another day.

The City's argument that "Plaintiffs fail to identify the [substantive due process] class definition in the Second Amended Complaint," Resp. at 7, fares no better. As the Seventh Circuit has held, "[a] complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy. Class definitions are not on that list." *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (internal citation omitted). In so holding, the court rejected the argument the City raises here: namely, that Plaintiffs should have to amend their complaint to assert their proposed class definition. *Id.* It is of no

---

[4]     The Court acknowledges that Plaintiffs' second amended complaint and motion for class certification at times repeat allegations that appear to do no more than restate their prior theory that the notice in the Prisoner Property Receipt is insufficient. 2d Am. Compl. ¶ 9; Mot. Class Cert at 5 ("Plaintiffs also contend that Evanston fails to provide adequate notice to persons who are in custody about how to retrieve their property."). Of course, proceeding on any such theory is precluded by the Court's previous opinion as discussed above. *Wilson*, 2016 WL 344533, at *4. Additionally, as noted above, Plaintiffs state in their reply brief that they do not intend to pursue the allegation that Cook County does not permit prisoners to access their receipts. Reply at 10–11.

consequence, therefore, that Plaintiffs do not propose their class definitions in their complaint.[5]

For these reasons, the City's merits arguments are misplaced. The Court will now turn to the requirements of Rule 23.

## I.    Ascertainability

Ascertainability is an implicit prerequisite for class certification under Rule 23. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A class is ascertainable if it is "defined clearly and based on objective criteria." *Id.* In particular, "class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. The City raises various arguments in disputing the ascertainability of Plaintiffs' proposed class definitions.[6]

### A.    Substantive Due Process Class

The City first argues that the phrase "conclusion of court proceedings" in Plaintiffs' substantive due process class definition is "overbroad and undefined." Resp. at 9. The City focuses its argument on the word "conclusion," raising the concern that the proposed class might be indefinite due to difficulties in determining when court proceedings are concluded. *Id.*

---

[5]    The City's reference to *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494 (N.D. Ill. 1999), does not command otherwise in light of the Seventh Circuit's statements in *Chapman*.

[6]    In addition, the City argues that Plaintiffs are outside of their proposed classes because their claims are not meritorious and they cannot prove them. Resp. at 9. For the reasons explained above, however, these arguments do not go to class certification. Significantly, the City does not argue that Plaintiffs fail to meet the stated criteria in their proposed class definitions.

The City is correct to point out that, at least at the margins, it might be unclear whether the conclusion of court proceedings requires a conviction or acquittal, an appeal, or exhaustion of collateral review (save some earlier resolution, such as dismissal by the prosecutor). In their reply brief, Plaintiffs explain that they were merely striving for a "plain English" version of the language in the Evanston ordinance on which their substantive due process claims are premised. Reply at 4. That ordinance states, in pertinent part, that "[i]f property seized . . . shall not be claimed by the rightful owner thereof . . . within sixty (60) days from the final disposition of the court proceedings in connection with such property was seized . . . the custodian of lost and stolen property may sell such property at a public auction." Mot. Class Cert., Ex. 6.; *see* Evanston Code of Ordinances § 9–7–3(A). "Conclusion" is Plaintiffs' plain English translation of "final disposition." Thus, even if "conclusion of court proceedings" is vague, it is somewhat disingenuous for the City to raise such an argument, given that the class definition draws the phrase from the City's own ordinance.

In light of this issue, the Court requested supplemental briefing on what "final disposition" of court proceedings means. The Court instructed the City to define its own ordinance, putting aside for purposes of the present motion the issue of whether the ordinance creates the property interest Plaintiffs claim. The City's proffered definition is that "final disposition" occurs when a criminal matter has reached a final, appealable judgment. Def.'s Supplemental Br. at 3. Plaintiffs agree with this definition. Pls.' Supplemental Br. at 5.

Altering Plaintiffs' class definition to incorporate the agreed-upon definition, with the addition of language to account for cases that do not reach a judgment,[7] removes the vagueness or overbreadth concerns of which the City complains. It is well within the Court's discretion to modify Plaintiffs' proposed class definition. *See, e.g.*, *Holmes v. Godinez*, 311 F.R.D. 177, 216 (N.D. Ill. 2015) (citing *Messner*, 669 F.3d at 815) (narrowing an overbroad class definition); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 297 (N.D. Ill. 2014) (same). The class definition, as amended, reads as follows:

> **Class I, Substantive Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at EPD and destroyed or otherwise disposed of, before court proceedings in connection with which such property was seized or otherwise taken possession of reached a final, appealable judgment, or were terminated without reaching such a judgment.

The City makes two further arguments regarding the ascertainability of the substantive due process class. First, the City maintains that neither the City's nor the Cook County Sheriff's records provide information from which the date of a final, appealable judgment or early termination by the government can be determined. Resp. at 9; Def.'s Supplemental Br. at 4. This argument, however, asks the Court to require not only that Plaintiffs' substantive due process class be defined clearly and objectively, but also that Plaintiffs provide a satisfactory evidentiary mechanism by which to identify members of the class. The Seventh

---

[7] The City's proffered definition fails to account for the fact that some criminal cases reach a "final disposition" without reaching the point at which a final, appealable judgment is rendered, such as when the government elects to voluntarily dismiss charges against a defendant.

Circuit has rejected this heightened ascertainability requirement. *Mullins*, 795 F.3d at 662, 672. The Court is persuaded that public court records or even affidavits from class members, *id.*, will likely suffice to determine class membership.

In addition, the City argues that the class definition requires the "improper subjective inquiry" of determining whether putative class members' property was "lost" or "stolen." Resp. at 9. The City divines this requirement not from the class definition itself—which makes no mention of lost or stolen property—but from the ordinance on which the substantive due process claim is premised, which, as noted above, is included under a chapter entitled, "Lost, Stolen Property." Mot. Class Cert., Ex. 6. The parties dispute whether the ordinance applies only to lost or stolen property. *Compare* Resp. at 9, *and* Def.'s Supplemental Br. at 2–3, *with* Reply at 5, *and* Pls.' Supplemental Br. at 3–5. This, again, is a merits question that is improper for the Court to decide at this stage. Regardless of whether the ordinance applies only to lost or stolen property, membership in the class does not turn on whether the putative class members' property was lost or stolen. Thus, the class definition is not defective in the manner the City suggests.

### B. Procedural Due Process Class

In opposing the procedural due process class definition, the City again argues that this definition is overbroad. It points to the fact that the definition does not limit membership to individuals in custody for at least thirty days, and thus, an arrestee released from custody in fewer than thirty days might seek class

membership, even though the arrestee was free to go to EPD and retrieve his or her property. Resp. at 10.[8] The City's point is well-taken. Indeed, at various points in their briefing, Plaintiffs seem to suggest that the putative class should be limited in such a manner. *See* Mot. Class Cert. at 3–4 ("Each of the named plaintiffs was held in custody for more than 30 days following arrest."); Pls.' Mot. Supplement Class Mot. ¶ 1, ECF No. 59 (describing the procedural due process class in part as comprising persons "who remained in custody for more than 30 days"). Accordingly, the Court proposes the following amended definition:

> **Class II, Procedural Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at EPD and destroyed or otherwise disposed of, while that person remained in the custody of a jail or penitentiary for over thirty days.[9]

The City further argues that the definition improperly calls for subjective inquiry into "affirmative steps [arrestees] took to recover inventoried personal property by the City." Resp. at 10. The Court is at a loss to understand the basis for this argument. This language is not in the proposed class definition, and Plaintiffs' procedural due process theory is not tied to arrestees' actions. In any event, the City does not argue that the criteria in the class definition are improperly

---

[8] This argument might be better viewed as a commonality or predominance argument, because the policy would impact arrestees incarcerated for fewer than thirty days differently. But, as we will see, the Court's re-definition removes the problem.

[9] The City also suggests that the class definition should be limited to arrestees in Cook County custody. Resp. at 10. But as previously explained, Plaintiffs' procedural due process claims depend not on Cook County–specific practices, but rather on the nature of EPD's property disposal policy, regardless of place of custody. Reply at 10–11. The City's further argument that there are insufficient records of custody outside of Cook County, Resp. at 10, again seeks to apply a heightened standard of ascertainability that the Seventh Circuit has rejected, *Mullins*, 795 F.3d at 662, 672.

subjective. Finally, the City argues that certain cell phones Sanders had in his possession were not in fact disposed of. Resp. at 10–11. But regardless of whether this is true, Sanders testified that the City destroyed a number of additional items of his property. Sanders Dep. at 62:24–63:11. Thus, because Sanders had additional items in his possession that were destroyed, it is immaterial whether Sanders's cell phones were in fact destroyed.

For the reasons stated above, and with the modifications indicated, the Court finds that Plaintiffs' class definitions are ascertainable.

## II.     Rule 23(a)(1): Numerosity

Plaintiffs must show that their classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Forty or more members is a general rule of thumb for determining numerosity, *see, e.g.*, *Pruitt v. City of Chi.*, 472 F.3d 925, 926–27 (7th Cir. 2006), but "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit," *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "[T]he party supporting the class cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990)). The court, however, "may make common sense assumptions to determine

numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015). The City argues that neither proposed class is sufficiently numerous.

### A.    Substantive Due Process Class

In regard to the substantive due process class, the City argues that Plaintiffs have not produced evidence from which the Court can determine the number of court proceedings that have reached finality, thereby precluding a finding of numerosity. Resp. at 11–12. In response, Plaintiffs argue that the City conceded the issue of numerosity in its answers to Plaintiffs' Second Requests to Admit, in which Plaintiffs asked the City a series of questions concerning arrestees, their length of custody, their property, and whether the City destroyed or disposed of it.

Contrary to Plaintiffs' representations, the City's responses to Plaintiffs' Second Requests to Admit do not concede numerosity on this basis. Mot. Class Cert. at 8; Reply at 8. Rather, the City objected to Plaintiffs' requests to admit concerning arrestees' length of custody. *E.g.*, Mot. Class Cert., Ex. 5 ¶ 2 ("Since the City does not control the information contained on the criminal docket, it cannot verify the accuracy of any such custody information contained therein for [an] arrestee."). The custody records Plaintiffs submitted along with their motion to supplement indicate that the City's objection was prudent. Take, for example, Terrell Brown, an arrestee who Plaintiffs represented in their Second Requests to Admit as having been "held at the Cook County Jail for more than 30 days," Mot. Class Cert., Ex. 5 ¶ 6. In fact, the records Plaintiffs submitted along with their

motion to supplement indicate he was in Cook County custody for merely two days, Mot. Supplement, Ex. 11. This is just one of a number of similar inaccuracies.

Despite the shortcomings of Plaintiffs' submissions, however, it is evident from the record that the substantive due process class is sufficiently numerous. The City's responses to Plaintiffs' Second Requests to Admit acknowledge that EPD destroyed or otherwise disposed of property retained on behalf of thirty-nine arrestees who, according to the custody information Plaintiffs have submitted, were in Cook County custody for more than thirty days. *See* Mot. Class Cert., Ex. 5, at ¶¶ 3–4, 35–36, 39–40, 47–48, 51–52, 55–56, 59–60, 63–64, 67–68, 79–80, 83–84, 99–100, 107–08, 111–12, 115–16, 119–20, 123–24, 143–44, 147–48, 159–60, 167–68, 175–76, 203–04, 211–12, 223–24, 231–32, 243–44, 251–52, 259–60, 263–64, 279–80, 291–92, 295–96, 299–300, 307–08, 315–16, 319–20, 323–24, 327–28; Mot. Supplement, Ex. 11.[10]  For these particular arrestees, the Court can make two, commonsense assumptions. First, the Court can assume that, while they were in Cook County custody, their court proceedings had not reached a final, appealable

---

[10]     It appears purely coincidental that Plaintiffs' submissions indicate a class of exactly forty members. (Plaintiffs' requests to admit referenced a larger number of arrestees, many of whose property was destroyed, but who were not incarcerated for over thirty days.)  The Court has included Wilson in this total, even though his length of incarceration is not specified in Plaintiffs' supplement, because his period of incarceration was longer than thirty days. Wilson Dep. at 57:10–14. Conversely, the Court has excluded an arrestee whose reason for discharge is listed as "County Sentence Expired." *E.g.*, Mot. Supplement, Ex. 11 (listing arrestee Antonio Hooper's "Release Reason" as "County Sentence Expired"). This reason for release could indicate that Hooper's court proceedings terminated prior to his release.  In addition, the Court has excluded arrestees whose Release Reason is listed as "Shipped Ill. Dept. Corrections," where their release occurred fewer than thirty days after being transferred to Cook County.  For these arrestees, it is possible that their cases had reached a final, appealable judgment upon being transferred to the Illinois Department of Corrections.

judgment or had been otherwise terminated. Had their court proceedings so concluded, the arrestees would have been released from custody. Second, the Court can assume that EPD followed its own policy with respect to the arrestees' property and destroyed or otherwise disposed of the property after thirty days. If EPD often waited longer than thirty days to dispose of arrestees' property, there is no indication of such in the record; on the contrary, the decision to reduce the amount of time from ninety to thirty days in the 2012 update of the property disposal policy suggests that EPD adhered to the thirty-day limit. If these commonsense assumptions are true, then EPD would have destroyed or otherwise disposed of property belonging to these individuals before determining that court proceedings had concluded in connection with which the property was retained.

Based on these assumptions and the record before the Court, the Court finds that a reasonable estimate of the substantive due process class is thirty-nine members. Moreover, the class is likely larger, given that the City admits that EPD disposed of property retained on behalf of a considerable number of additional arrestees who were released on bond, for whom court proceedings were presumably still ongoing. *E.g.*, Mot. Class Cert., Ex. 5 ¶¶ 195–96 (admitting to disposal of property belonging to arrestee Alexander Ireta); Mot. Supplement, Ex. 11 (indicating that Ireta was released on bond after spending twenty-six days in Cook County custody).[11] Accordingly, the Plaintiffs have provided sufficient proof that the proposed class meets the numerosity requirement. *See Arreola*, 546 F.3d at 797

---

[11] Such individuals likely could not be included in the procedural due process class, discussed below, because they would be free on bond to retrieve their property from EPD.

(affirming certification where only fourteen potential class members were identified, but evidence in the record supported a larger estimate).

Based on the foregoing analysis, the Court finds that the substantive due process class is sufficiently numerous.

## B. Procedural Due Process Class

The City again argues, with respect to the procedural due process class, that Plaintiffs have offered nothing more than speculation as to the class's size. But, for the reasons explained above, there are at least thirty-nine members in this class as well. (Again, the City has admitted that it disposed of property retained on behalf of thirty-nine arrestees, all of whom were held in Cook County custody for over thirty days.) Moreover, this class is also likely larger than thirty-nine, because the City admits that EPD disposed of property retained on behalf of additional arrestees who remained in custody, but were transferred to other institutions. *E.g.*, Mot. Class Cert., Ex. 5 ¶¶ 331–32 (admitting to disposal of property belonging to arrestee Thomas Whitehead); Mot. Supplement, Ex. 11 (indicating that Whitehead was transferred to the Illinois Department of Corrections after spending twenty-three days in Cook County custody); *see Arreola*, 546 F.3d at 797. Contrary to the City's argument, Resp. at 12, these individuals would be included in the class, which is not limited to individuals in Cook County custody. Thus, the procedural due process class is also sufficiently numerous.

### III.    Rule 23(a)(2): Commonality

In order to proceed on behalf of a class, Plaintiffs must further demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that their claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

As to the substantive due process class, the claims of all putative class members arise from EPD's purported policy of contravening the City's ordinance by destroying or disposing of arrestees' property before the conclusion of the underlying criminal proceedings. As to the procedural due process class, all putative class members' claims depend on whether EPD's property disposal policy is constitutionally adequate because it requires arrestees to designate someone to pick up their property, rather than holding it until their release. These are central questions common to each class.

The City's arguments to the contrary are unavailing. Regarding the substantive due process class, the City renews its argument that the City ordinance at issue does not apply in this context. Resp. at 13. But this does not demonstrate that the class's claims are not bound by a common question. If the City's merits

position is correct, it possesses a common answer to the question that will defeat the claims of all class members. *Tyson*, 136 S. Ct. at 1047 (explaining that, where the purported problem with a class is that all its members' claims suffer from the same flaw, commonality is nevertheless present). Concerning the procedural due process class, the City's argument that Plaintiffs had access to their property receipts while in Cook County custody, Resp. at 13, is focused on a theory Plaintiffs no longer intend to pursue. Thus, Plaintiffs have satisfied their burden of establishing commonality.

## IV.    Rule 23(a)(3): Typicality

In addition to demonstrating commonality, Plaintiffs must show that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Here, as explained above, Plaintiffs assert that EPD arrested them and retained some of their property upon transferring them to Cook County custody. They further maintain that they remained in custody for over thirty days while their criminal cases were pending, during which time EPD destroyed or disposed of their property. They challenge these actions on the basis of the substantive and procedural due process theories

described above. The Court is persuaded, therefore, that their claims are typical of the class.

The City contends otherwise, asserting that "[t]he same facts and arguments that bar Plaintiffs' Section 1983 claims also bar them from meeting the typicality requirement for class certification." Resp. at 13. But as explained throughout, these facts and arguments—insofar as they properly go to class certification—are not unique to Plaintiffs, but are common arguments that would apply to the claims of all putative class members.[12] Plaintiffs' claims, therefore, are typical of the class.

## V.    Rule 23(a)(4): Adequacy

The final requirement that Plaintiffs must demonstrate under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative parties are inadequate if their claims are "subject to a defense that would not defeat unnamed class members." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). To that end, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Additionally, the named plaintiffs' counsel must be adequate. *Retired Chi. Police*

---

[12]    It is worth noting that, while the City isolates certain statements Plaintiffs made in their depositions, these statements either misunderstand the nature of Plaintiffs' claims, or merely expose issues common to the class. Specifically, the City notes that "[Plaintiffs] admit that the property inventoried by the City was their personal property and was neither lost nor stolen." *Id.* But the source of this argument is not Plaintiffs' admissions, but instead the City's theory (whether right or not) that the ordinance at issue does not create the property interest asserted. The City further observes that "[Plaintiffs] admit that they had . . . their respective Prisoner Property Receipts while in custody." *Id.* But this argument is directed at a procedural due process theory that Plaintiffs have abandoned.

*Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). The City does not argue that the adequacy requirement is not satisfied. The Court is persuaded that, based on the foregoing, Plaintiffs' claims are not subject to any unique defenses and the claims of the class will be relatively homogenous. Additionally, the Court is satisfied that Plaintiffs' counsel, based on their representations and experience, are well qualified to represent the class. *See* Mot. Class Cert. at 12–13. Plaintiffs have therefore satisfied the adequacy requirement.

## VI.    Rule 23(b)(3): Predominance

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy the requirements of Rule 23(b)(3). The first requirement is that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is "far more demanding" than the requirement of commonality. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). "Predominance is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (alterations in original) (quoting *Messner*, 669 F.3d at 815). To evaluate predominance, the court must "begin[ ] . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

To prove a § 1983 claim, Plaintiffs must show that (1) the City intentionally or recklessly deprived them of a constitutional right; (2) the City acted under color

of state law; and (3) the City's actions constituted the legal cause of Plaintiffs' damages. *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998). In regard to Plaintiffs' substantive due process claim, this inquiry "involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements." *Id.* The driving question for this claim is whether the City ordinance on which they rely creates a constitutionally protected property interest, such that EPD's property disposal policy violates their substantive due process rights. "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009). Because the members of the proposed substantive due process class seek to rely on the same theory—that the City's ordinance created a protected interest that was violated by EPD's new policy—the viability of this theory predominates.

Seeking to avoid this conclusion, the City points to individual issues, including, "among other things, individual questions of whether prospective class members 'owned' the arrestee property at issue, whether they remained in County custody for more than 30 days . . . , and the actual value of the property allegedly destroyed or disposed by the City." Resp. at 14.[13] These issues, however, are "generally commonplace, or at least not so cumbersome as to defeat the Rule 23(b)(3) predominance requirement" in a due process case. *Cancel*, 254 F.R.D. at

---

[13] The City also identifies "whether [class members] had access to their property receipts while in County custody" and "whether they made any affirmative attempts to retrieve their property from the City" as individual issues. *Id.* But for reasons explained previously, neither issue precludes certification at this stage.

511. First, regarding arrestees' ownership of the property at issue, it is by no means clear that establishing ownership is necessary for liability. Rather, Plaintiffs claim that the City's ordinance creates a substantive due process interest in property they possessed at the time of their arrest, whether they owned it or not. And while the value of that property may go to individual members' damages, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815. In addition, as noted above, the Court is persuaded that public court dockets or class members' affidavits will likely permit identification of members of the class in a straightforward manner. Moreover, even crediting the existence of these individualized issues, the Court finds that they are outweighed by the common questions that underlie the class members' claim. *Bell*, 800 F.3d at 381 (explaining that, for the purpose of predominance, "our cases demonstrate that commonality as to every issue is not required for class certification"). For these reasons, Plaintiffs have carried their burden of establishing the predominance requirement with regard to the substantive due process class.

The procedural due process class, however, requires a more lengthy discussion. "Procedural due process in constitutional law generally involves a familiar line of inquiry: (1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). The latter aspect of the inquiry—what process is due and when—is governed by *Mathews v.*

*Eldridge*, 424 U.S. 319 (1976). *Mathews* requires a court to balance three factors: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Simpson*, 860 F.3d at 1006 (citing *Mathews*, 424 U.S. at 335).

Here, the Court will assume that Plaintiffs wish to proceed with the theory stated in their supplemental brief: "whether the notice requiring an in-custody arrestee to find a designee to retrieve his (or her) property provides a constitutionally adequate procedure," Pls.' Supplemental Br. at 7, or whether the City must instead hold arrestees' property until their release. The issue, therefore, is whether application of *Mathews* to this theory will involve predominantly common questions. Because each of *Mathews*'s factors looks to aggregate concerns, the answer is yes. Take, for example, *Simpson v. Brown County*, which Plaintiffs cite in their supplemental brief. There, a county board revoked the plaintiff's license to install and repair septic systems without notice or an opportunity to be heard. 860 F.3d at 1003. In evaluating his claim, the Court first quantified the private interest at stake, which it generalized as his "ability to earn a livelihood." 860 F.3d at 1008. It then balanced this interest against the risk that deprivation of his interest might occur erroneously. In doing so, it looked not to the plaintiff's specific circumstances, but whether there was "a high risk that *someone like Simpson* could have his license revoked without so much as a warning." *Id.* at 1009

(emphasis added). And finally, it weighed this risk against the government's interest: "public health and safety." *Id.*

Here, adjudication of Plaintiffs' claims will require a similar analysis that evaluates Evanston's policy in the aggregate. The Court will look to the general nature of the private interest at issue, consider the risk of erroneous deprivation and value of requiring the City to hold onto arrestees' property until their release, and weigh these concerns with the City's interest motivating its policy. This task will not involve individualized inquiries, but instead the common application of *Mathews* to Plaintiffs' claim. *See Elizarri v. Sheriff of Cook Cty.*, No. 07 CV 2427, 2015 WL 1538150, at *3–5 (N.D. Ill. Mar. 31, 2015) (applying *Mathews* to a similar procedural due process claim in which a class challenged a process for disposing of inmate property). Courts have held that similar suits raise predominantly common questions. *See Gates v. City of Chi.*, No. 04 C 2155, 2011 WL 1811187, at *10 (N.D. Ill. May 12, 2011) ("The core issue is whether the City is constitutionally obligated to return all inventoried cash to arrestees at the conclusion of their underlying criminal cases. This common question of liability will predominate even in the face of secondary issues or factual differences for purposes of class certification." (citation omitted)); *see also Gates v. Towery*, No. 04 C 2155, 2004 WL 2583905, at *5, *8 (N.D. Ill. Nov. 10, 2004), *aff'd*, 430 F.3d 429 (7th Cir. 2005) (holding that common questions predominated in suit where plaintiffs challenged prison's property receipt policy on procedural due process grounds).

In its supplemental brief, the City maintains that the Court will have to entertain a host of individual issues in adjudicating the putative class's claims. First, it argues that liability will depend on whether an arrestee took affirmative steps to retrieve his or her property, and whether an arrestee had access to a designee. Def.'s Supplemental Br. at 5–7. But this argument misunderstands Plaintiffs' theory, which postulates that, regardless of what affirmative steps could have been or were taken, due process requires that the City hold onto their property until their release. Second, the City contends that the Court would have to determine if the City in fact disposed of Plaintiff's property, and the value of that property. *Id.* at 6. But, for the reasons stated above, these individualized issues do not predominate over the common legal question that binds the putative class's procedural due process claim.

Finally, the City argues that the Court will have to consider whether each class member "had prior and/or subsequent arrests . . . where they successfully retrieved personal property under the City's subject policy at issue." *Id.* at 7. It points to evidence that Plaintiffs, on other occasions, were able to retrieve their personal property. *Id.* This evidence, of course, could be relevant in determining the risk of depriving arrestees of their property and the extent to which additional procedural safeguards—namely, retaining arrestees' property until their release— would be valuable. But it does not create an individualized concern that affects liability. Rather, as explained above, the Court will still need to apply the *Mathews*

framework to the City's policy to determine whether the members of the class have a viable due process claim.

## VII. Rule 23(b)(3): Superiority

Rule 23(b)(3) also requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requires the court to weigh the benefits of class versus individual adjudication of the issues presented. *See Messner*, 669 F.3d at 815 n.5. The court must "assess the difficulty and complexity of the class-wide issues as compared with the individual issues" and "decide whether classwide resolution would substantially advance the case." *Suchanek*, 764 F.3d at 760–61. The more that common issues predominate, the more likely that class adjudication is superior. *Messner*, 669 F.3d at 815 n.5.

The City does not dispute whether the superiority requirement is met. In any case, the Court is persuaded that a class action is a superior method of adjudicating the controversy at issue. As explained above, common questions predominate heavily over individualized issues, such that it is the best use of judicial resources to utilize class adjudication. *Messner*, 669 F.3d at 815 n.5. To the extent individualized issues remain, "it makes good sense . . . to resolve [the common] issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Additionally, given that the value of the personal property of some class members will undoubtedly be very low, their claims might

not be litigated without a class action. *Streeter*, 256 F.R.D. at 614. For these reasons, the superiority requirement of Rule 23(b)(3) is satisfied.

### Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification [57] is granted. Plaintiffs may proceed with their claims on behalf of the following class:

> **Class I, Substantive Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at EPD and destroyed or otherwise disposed of, before court proceedings in connection with which such property was seized or otherwise taken possession of reached a final, appealable judgment, or were terminated without reaching such a judgment.

> **Class II, Procedural Due Process**: All persons whose property, following an arrest on and after October 23, 2012, was held at EPD and destroyed or otherwise disposed of, while that person remained in the custody of a jail or penitentiary for over thirty days.

**IT IS SO ORDERED.**          **ENTERED  8/30/17**

_____
**John Z. Lee**
**United States District Judge**