IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERMAINE WILSON and DAMEON SANDERS, individually and for a class, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CITY OF EVANSTON, ILLINOIS, | ) ) |
| Defendant. | ) |

No. 14 C 8347

Judge John Z. Lee

## MEMORANDUM OPINION AND ORDER

Upon being arrested and booked by police officers from the City of Evanston, in Cook County, Illinois ("Evanston"), in July 2013, Plaintiffs Jermaine Wilson and Dameon Sanders had their personal belongings inventoried and were given thirty days to reclaim those belongings that would not be accepted by the Cook County Department of Corrections. Long after Plaintiffs failed to follow its procedures for reclaiming their belongings, Evanston destroyed them. On behalf of themselves and two classes of similarly situated individuals, Plaintiffs allege in this action that Evanston's disposal of their personal property pursuant to its reclamation policies violated their procedural and substantive due process rights. Now before the Court are cross motions for summary judgment. For the reasons set forth below, Plaintiffs' motion is denied, and Evanston's motion is granted.

## I. Background

### A. Facts[1]

Wilson was arrested by Evanston police officers on July 10, 2013. Pls.' LR 56.1(a)(3) Statement of Facts ("PSOF") ¶ 9, ECF No. 162. At the time, he had in his possession a wedding ring, a cell phone, and a backpack containing miscellaneous items. *Id.* ¶ 10; *see id.*, Ex. 4, Wilson Prisoner Receipt ("Wilson Prisoner Receipt"), ECF No. 152-5.

Sanders, too, was arrested by Evanston police officers, on July 25, 2013. PSOF ¶ 14. In his possession were two cell phones, a Link card, three Chicago Transit Authority cards, a debit card (which Sanders says was a prepaid debit card worth $500), a hat, and a belt. *Id.* ¶ 15; *see id.*, Ex. 11, Sanders Property Receipt ("Sanders Property Receipt"), ECF No. 152-12.

When Wilson and Sanders arrived at the police station, police officers seized and inventoried the aforementioned belongings pursuant to Evanston's official policy. PSOF ¶¶ 11, 16. Officers then handed each one a yellow copy of a "Prisoner Property Receipt," which listed the inventoried items and contained the following notice:

> Certain property in your possession will not be accepted by the Cook County Department of Corrections when you are transported to court for your bond hearing . . . . In order to protect [these items], we have inventoried them with our Property Bureau. You or your designee will have 30 days from the date of your arrest to retrieve these items. If you do not retrieve these items within the 30 days they will be disposed of as provided by statute. THIS IS THE ONLY NOTICE YOU WILL RECEIVE ABOUT YOUR PROPERTY."

---

[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

2

Wilson Property Receipt; Sanders Property Receipt; *see also* Def.'s LR 56.1(a)(3) Statement of Facts ("DSOF") ¶¶ 25–26, ECF No. 160.

Below the notice, each Plaintiff was asked to sign an acknowledgment that he had read and understood its terms. The form also provided a space for Wilson and Sanders to designate a particular individual to reclaim his property by presenting the same yellow copy of the inventory receipt (plus photo identification) at the Property Bureau within thirty days. *See* Wilson Property Receipt; Sanders Property Receipt.

Evanston's policy also permitted arrested individuals to reclaim their property by other means. For example, an arrestee can designate someone to pick up his or her property by calling or writing to the Evanston Police Department ("EPD"). He or she also can make a request for return of the property through his or her attorney. DSOF ¶¶ 45–47. Evanston's website, which provides additional information about arrestee property, further states that, "[u]nder unusual circumstances, an arrestee may make a written request for extension of the holding period," which "will be evaluated on a case-by-case basis." *Id.* ¶¶ 33, 36.[2]

Wilson and Sanders were each transferred to the custody of the Cook County Sheriff within days of their arrests, and attorneys were appointed for their defense. DSOF ¶¶ 66, 68, 75, 81. Wilson remained in custody until at least February 2014,

---

[2] Prior to 2013, Evanston policy gave arrestees up to ninety days to retrieve their personal property, but had a more elaborate process for doing so. *See* PSOF ¶ 19; *id.*, Ex. 15, Wasowicz Dep. at 13:3–14:20, ECF No. 152-16. For instance, arrestees who wanted to designate someone to pick up their belongings had to arrange for the jail to send a notarized letter to the Evanston Police Department. Wasowicz Dep. at 13:17–24. Michael Wasowicz, who oversaw the Property Bureau at the time, spearheaded a change to the policy in effect in this case based on a model he had observed while working for the Skokie Police Department. DSOF ¶¶ 40–42.

when he sent a Freedom of Information Act request to the EPD asking for a new copy of his property receipt, because his original copy had been ruined. *See* DSOF ¶ 72; Def.'s Resp. Pls.' LR 56.1 Statement of Facts ¶ 12, ECF No. 162. This was the only effort that Wilson made to recover his inventoried belongings. DSOF ¶ 72.

As for Sanders, he designated his then-girlfriend, Jessica Mosley, to reclaim his belongings using the inventory receipt, but Mosley did not to do so in time. *Id.* ¶¶ 76–77. Sanders also contacted a friend named William Lee to retrieve the belongings while in he was custody, but Lee was unable to do so because he did not have a copy of the inventory property receipt authorizing the EPD to release Sanders's property to him. *Id.* ¶ 78. Sanders called the EPD to request that it release his property to Lee anyway, but to no avail. *Id.* ¶¶ 79–80.

Evanston destroyed Sanders's unclaimed belongings nearly nine months after his arrest, on April 8, 2014. PSOF ¶ 18; DSOF ¶ 15. It destroyed Wilson's unclaimed belongings a few weeks later, on April 30, 2014. PSOF ¶ 13; DSOF ¶ 13.

**B.     Procedural History**

Wilson filed this action on October 23, 2014, *see* Compl., ECF No. 1, and an amended complaint on May 12, 2015, *see* Am. Compl., ECF No. 26. The City filed a motion to dismiss under Rule 12(b)(6), which the Court granted in part and denied in part. *See* 1/28/16 Mem. Op. and Order, ECF No. 40. One the one hand, the Court held that the amended complaint did not assert a claim under the Fourth Amendment and failed to state a claim under the Fifth Amendment's Taking Clause because Wilson had not exhausted his state law remedies for the alleged taking of property.

4

On the other hand, the Court ruled that the complaint did state a procedural due process claim under the Fourteenth Amendment, to the extent it alleged that the process by which Wilson was allowed to recover his property was inadequate.

Wilson filed a second amended complaint on August 31, 2016, naming Sanders as an additional plaintiff and alleging both procedural and substantive due process claims. *See* 2d Am. Compl., ECF No. 56. Plaintiffs then moved to certify the following classes pursuant to Rule 23(b)(3):

> **Class I, Substantive Due Process:** All persons whose property, following an arrest on and after October 23, 2012, was held at the Evanston Police Department and destroyed or otherwise disposed of before the conclusion of court proceedings in connection with which such property was seized or otherwise taken possession of.
>
> **Class II, Procedural Due Process:** All persons whose property, following an arrest on and after October 23, 2012, was held at the Evanston Police Department and destroyed or otherwise disposed of while that person remained in the custody of a jail or penitentiary.

Pls.' Mot. Class Cert. at 1, ECF No. 57. The Court granted the motion and certified both classes on August 30, 2017. *See* 8/30/17 Mem. Op. and Order, ECF No. 75.

More than a year later, the Supreme Court held in *Knick v. Township of Scott* that a plaintiff need not exhaust state law remedies before asserting a claim under the Takings Clause. 139 S. Ct. 2162, 2177–79 (2019). Plaintiffs then asked the Court to reconsider its order of January 28, 2016, granting Evanston's motion to dismiss the first amended complaint as to that claim. *See* Pls.' Mot. Reconsider, ECF No. 124. The Court granted the motion in light of *Knick* and vacated that portion of its January

28, 2016, order. *See* 3/9/20 Order, ECF No. 140. However, Plaintiffs never amended their operative second amended complaint to reallege a Takings Clause claim.

Now that discovery has closed, each side has moved for summary judgment. *See* Pls.' Mot. Summ. J., ECF No. 150; Def.'s Mot. Summ. J, ECF No. 158.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). To satisfy that ultimate burden, the nonmoving party must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the case of cross-motions, courts "look to the burden of proof that each party would bear on an issue as trial." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole— from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

### III. <u>Analysis</u>

Each side moves for summary judgment on Plaintiffs' procedural and substantive due process claims. The Court takes the claims in turn.

### A. **Procedural Due Process Claim**

The Court begins with Plaintiffs' procedural due process claim. Procedural due process requires two things "before the state may take property"—"adequate notice and an opportunity to be heard." *Conyers v. City of Chi.*, 10 F.4th 704, 712 (7th Cir. 2021), *reh'g and reh'g en banc denied* (2021). Consistent with the Court's order on Evanston's motion to dismiss the first amended complaint, Plaintiffs do not dispute that the inventory receipts they received from the EPD "provided constitutionally adequate notice." DSOF ¶ 18. So the only issue is whether Evanston provided "the process that was due to justify the deprivation" of their belongings. *See Armato v. Grounds*, 766 F.3d 713, 721–22 (7th Cir. 2014)).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what process is due in a particular situation, courts "must balance three factors: '[f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements

would entail.'" *Schepers v. Comm'r, Ind. Dep't of Corr.,* 691 F.3d 909, 915 (7th Cir. 2012) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) (alteration in original)).

Here, Plaintiffs argue that the *Mathews* balancing test requires Evanston to hold onto arrestee property "for persons who are unable to secure pre-trial release" until sometime after they have been released. Pls.' Mem. Supp. Mot. Summ. J. at 14, ECF No. 151. Plaintiffs contend that such a procedure would minimize erroneous deprivations—characterized as disposals of property which an arrestee does not wish to abandon—without imposing any burden on Evanston.

Not only is Plaintiffs' argument devoid of any legal authority, it is foreclosed by the Seventh Circuit's recent decision in *Conyers*. There, the court found "no support in due-process cases for the proposition that the City must serve as an involuntary bailee of property for lengthy periods of time, incurring all the costs and responsibilities that such a status would implicate. 10 F.4th at 715. Much like this case, *Conyers* involved the City of Chicago's disposal of arrestee property that had not been reclaimed within thirty days under a similar procedure. *Id.* at 706–08. In affirming the district court's grant of summary judgment for the City of Chicago, the appellate court held that the City's disposal of the property violated neither the Takings Clause nor procedural due process. *Id.* at 710–15.

Granted, as Plaintiffs point out in their supplemental brief, much of the due process analysis in *Conyers* turned on the adequacy of Chicago's notice rather than its reclamation procedures. *See id.* at 712–14. Nonetheless, the Seventh Circuit implicitly determined that its reclamation procedures were constitutionally adequate

8

as well.  Notably, in rejecting the plaintiffs' Takings Clause claim (which the court found to be "intertwined" with their due process claim, *id.* at 712), the court held that Chicago did not owe compensation because it "was entitled to treat th[e] property as abandoned—that is, intentionally relinquished—when the plaintiffs failed to follow the reclamation procedures the City offered." *Id.* at 711.  Posing itself the question of "where, between a day and forever, does the Constitution draw the line," the court discerned "nothing unconstitutional about the City's decision to deem property abandoned after 30 days have elapsed," noting that "the 30-day limit reflected the practical constraints on storage capacity" and that the City "offered several ways for the detainee to reclaim his property." *Id.* at 711–12.  And the court reprised this reasoning with respect to the plaintiffs' procedural due process claim in holding that due process did not require the City to "serve as an involuntary bailee of property" for lengthier periods of time.  *Id.* at 715.  The same reasoning holds true here.

Plaintiffs' efforts to distinguish *Conyers* on its facts are unpersuasive.  For starters, they identify no relevant difference between the reclamation procedures of Evanston and those of Chicago in *Conyers*.  Instead, Plaintiffs assert that Evanston does not share Chicago's constraints on storage capacity, citing a February 6, 2018, letter in which an attorney with Evanston informed Plaintiffs' counsel that it had made a "temporary legal decision" to refrain from disposing of arrestee property "in order to reduce [its] potential damages" in this action.  *See* Pls.' Mot Compel, Ex. 5, 2/6/18 Letter from H. Ford, Jr. to K. Flaxman, ECF No. 83 at 70–71.  But this temporary decision hardly suggests that Evanston has the capacity to hold onto all

9

arrestee property indefinitely. To the contrary, common sense supports (and Plaintiffs fail to refute) Evanston's assertion that it, too, has limited space to store the property inventoried from the approximately forty arrests that it makes each month. *See* DSOF ¶ 49. And even if Evanston had limitless storage space, it would still have to incur "all of the costs and responsibilities" that accompany the status of an "involuntary bailee of property for lengthy periods of time." *See Conyers*, 10 F.4th at 715. Under the reasoning of *Conyers*, Evanston's interest in avoiding such additional fiscal and administrative burdens is the paramount consideration for purposes of procedural due process.

Thus, because Evanston's policy gave Plaintiffs a constitutionally sufficient opportunity to reclaim their property before it was disposed of, Evanston's motion for summary judgment is granted as to Plaintiffs' procedural due process claim, and Plaintiffs' motion is denied.

### B. Substantive Due Process Claim

The Court turns next to Plaintiffs' substantive due process claim. Both the Supreme Court and the Seventh Circuit have repeatedly emphasized "how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225,* 158 F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702, (1997)). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chi.*, 330 F.3d 456, 467

10

(7th Cir. 2003) (citing *Glucksberg*, 521 U.S. at 728). Furthermore, when, as in this case, "a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in this deferential rational-basis review." *Id.* (cleaned up).

Here, Plaintiffs contend that Evanston's disposal of their property violated substantive due process because, in their view, an ordinance requires Evanston to hold onto arrestee property for sixty days "from the date of the final disposition of the court proceedings in connection with which such property was seized or otherwise taken possession of." *See* Evanston, Ill., Code § 9-7-3 (discussing "lost or stolen property"). Plaintiffs assert that this ordinance creates "a legitimate claim of entitlement"—that is, a property interest—"protected by the Due Process Clause." *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (cleaned up).

Plaintiffs, however, overlook the bulk of the framework that applies to their substantive due process claim. Under that framework, "the deprivation of a property interest" under an independent source of law is merely the catalyst for constitutional scrutiny, not the end of it. *See Lee*, 330 F.3d at 467. Thus, assuming *arguendo* that the ordinance to which Plaintiffs point applies to arrestee property,[3] they must proceed to show *either* "an independent constitutional violation" *or* "the inadequacy of state law remedies," *and* that Evanston's practice of disposing of such property

---

[3] Evanston disputes this point, contending that arrestee property does not constitute "lost or stolen property" within the meaning of Evanston Code § 9-7-1 *et seq*. Given its above reasoning, the Court need not resolve this dispute.

11

after thirty days is not "rationally related to a legitimate governmental interest." *See id.* But Plaintiffs have failed to show an independent constitutional violation, and they make no argument that the state law remedies available to them are inadequate. Lastly, even if they could make that showing, *Conyers* indicates that a municipality's decision to treat arrestee property as abandoned after thirty days is rationally related to its legitimate interest in avoiding the burdens of serving as "an involuntary bailee of property for lengthy periods of time," as discussed above. *See* 10 F.4th at 715. And to the extent Plaintiffs suggest that Evanston's disposal of their property violated substantive due process simply because it was inconstant with § 9-7-3, they ignore that "an error of state law is not a violation of due process." *See Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 711 (7th Cir. 2004) (finding no violation of substantive due process where the manner in which a city council effectuated a deprivation of property "may have violated state law").

Accordingly, Evanston's cross-motion for summary judgment is granted as to Plaintiffs' substantive due process claim, and Plaintiffs' motion is denied.

## C. Purported Takings Clause Claim

Finally, the parties dispute whether a Fifth Amendment Takings Clause claim is currently before the Court. As noted, the Court vacated the portion of its order dismissing this claim from the first amended complaint, but this was after Plaintiffs had filed a second amended complaint that did not include a Takings Clause claim. At that point, Plaintiffs should have asked for leave to file a third amended complaint realleging this claim, but did not do so. Accordingly, because Plaintiffs' operative

second amended complaint is devoid of a Taking Clause claim, it would substantially prejudice Evanston to recognize such a claim at this point. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a complaint must "give the defendant fair notice of what the claim is" under Rule 8(a)(2) (cleaned up)).

Plaintiffs' reliance on *Koger v. Dart*, 950 F.3d 971, 974–75 (7th Cir. 2020), for the proposition that they did not have to reallege a Takings Clause claim is misplaced. *Koger* applied *Johnson v. City of Shelby*, which held that Rule 8(a)(2) "do[es] not countenance the dismissal of a complaint for imperfect statements of the legal theory supporting the claim asserted." 574 U.S. 10, 11 (2014). This hardly supports the view that Plaintiffs may invoke at summary judgment a claim that was dismissed from an earlier complaint and which bears no trace in their operative complaint.

Furthermore, even assuming that a Taking Clause claim were properly before the Court, it, too, would be foreclosed by *Conyers*.[4] To review, the Seventh Circuit held in *Conyers* that the City of Chicago did not violate the Taking Clause by taking property without compensation because it "was entitled to treat th[e] property as abandoned . . . when the plaintiffs failed to follow the reclamation procedures the City offered." 10 F.4th at 711. This reasoning applies with equal force here. Plaintiffs' retort that this holding hinged on the magic words "presumptively abandoned" in the Chicago ordinance does not stand up to scrutiny. *See* Pls.' Suppl. Mem. at 2 (quoting *Conyers*, 10 F.4th at 706 (in turn citing Chi., Ill., Code § 2-84-160 *et seq.*)). Thus, Evanston would be entitled to summary judgment on any such claim as well.

---

[4] Because the parties have briefed the merits of the claim, the Court may address its merits. *See, e.g., Terrado v. Moyer*, 820 F.2d 920, 922 (7th Cir. 1987).

## IV. Conclusion

For the reasons set forth above, Plaintiffs' cross-motion for summary judgment is denied, and Evanston's cross-motion for summary judgment is granted. Judgment will be entered in favor of Defendant City of Evanston. Civil case terminated.

**IT IS SO ORDERED.**     **ENTERED: 9/28/21**

*/s/ John Z. Lee*

**John Z. Lee
United States District Judge**